Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ryan Sperber, individually and on behalf of all others similarly situated,<br><br>    *Plaintiff,*<br><br>v.<br><br>The M Jewelers, Inc.,<br><br>    *Defendant.* | Case No. 2:25-cv-02029<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## Table of Contents

I.      Introduction..........................................................................................................1

II.     Parties. ...............................................................................................................4

III.    Jurisdiction and Venue. ....................................................................................4

IV.     Facts. ..................................................................................................................5

        A.      Defendant's fake sales and discounts. ...............................................5

        B.      Defendant's advertisements are unfair, deceptive, and unlawful ...............14

        C.      Defendant's advertisements harm consumers.....................................16

        D.      Plaintiff was misled by Defendant's misrepresentations. ................17

        E.      Defendant breached its contract. .......................................................19

        F.      No adequate remedy at law. ..............................................................20

V.      Class Action Allegations. ...............................................................................21

VI.     Claims. .............................................................................................................23

        First Cause of Action: Violation of California's False Advertising Law Bus.

                & Prof. Code §§ 17500 & 17501 et. seq. ..........................................23

        Second Cause of Action: Violation of California's Consumer Legal

                Remedies Act (By Plaintiff and the California Subclass) ................25

        Third Cause of Action: Violation of California's Unfair Competition Law..........27

        Fourth Cause of Action: Breach of Contract.....................................................29

        Fifth Cause of Action: Breach of Express Warranty .......................................30

        Sixth Cause of Action: Quasi-Contract/Unjust Enrichment .................................31

        Seventh Cause of Action: Negligent Misrepresentation.........................................32

        Eighth Cause of Action: Intentional Misrepresentation.......................................33

VII.    Relief..............................................................................................................34

**I.    Introduction.**

1.    Advertised "sale" prices are important to consumers.  Consumers are more likely to purchase an item if they know that they are getting a good deal.  Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2.    While there is nothing wrong with a legitimate sale, a fake one—that is, one with made-up regular prices, made-up discounts, and made-up expirations—is deceptive and illegal.

3.    Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading.  Cal. Bus. & Prof. Code § 17500.  This includes statements falsely suggesting that a product is on sale, when it actually is not.

4.    Moreover, section 17501 of California's False Advertising Law provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising.  Cal. Bus. & Prof. Code § 17501.  So, in addition to generally prohibiting untrue and misleading fake discounts, it also specifically prohibits this particular flavor of fake discount (where the advertised former price is not the prevailing price during the specified timeframe).

5.    In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."  Cal. Civ. Code § 1770(a)(9), (13).

6.    Moreover, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off of that price.  16 C.F.R. § 233.1.  They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely

suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.1.

7.      As numerous courts have found, fake sales violate these laws. They also violate California's general prohibition on unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

8.      Defendant The M Jewelers Inc. ("The M Jewelers" or "Defendant") makes, sells, and markets jewelry and accessories (the "The M Jewelers Products" or "Products"). The Products are sold online through Defendant's website, TheMJewelersNY.com, and in a handful of brick-and-mortar stores.

9.      Defendant lists purported regular prices and advertises purported limited-time sales offering steep discounts from those listed regular prices, for example "50% OFF." Defendant uses countdown clocks to represent that its sales are limited-time and on the verge of ending. Examples are shown below:



1
2
3
4
5
6
7
8
9
10
11
12
13



14      10.     Far from being time-limited, however, steep sitewide discounts on

15 Defendant's Products are always available. As a result, everything about Defendant's

16 price and purported discount advertising is false. The list prices Defendant advertises

17 are not actually Defendant's regular prices, because Defendant's Products are always

18 available for less than that. The purported discounts Defendant advertises are not the

19 true discount the customer is receiving, and are often not a discount at all. Nor are the

20 purported discounts limited time—quite the opposite, they are always available.

21      11.     As described in greater detail below, Ms. Sperber bought Products from

22 Defendant from its website, TheMJewelersNY.com, as well as at Defendant's brick-and-

23 mortar store in Los Angeles. When Ms. Sperber made her purchases, Defendant

24 advertised that sales were going on, and Defendant represented that the Products Ms.

25 Sperber purchased were being offered at a steep discount from the purported regular

26 prices that Defendant advertised. And based on Defendant's representations, Ms.

27 Sperber believed that she was purchasing Products whose regular price and market value

28 were the purported list prices that Defendant advertised, that she was receiving

substantial discounts, and that the opportunity to get those discounts was time-limited. These reasonable beliefs are what caused Ms. Sperber to buy from Defendant when she did.

12.    The representations Ms. Sperber relied on, however, were not true. The purported regular prices Defendant advertised were not the true regular prices that Defendant usually sells the Products Ms. Sperber purchased for, the purported discount was not true discounts, and the discounts Ms. Sperber received were ongoing—not time-limited. Had Defendant been truthful, Ms. Sperber and other consumers like her would not have purchased the Products, or would have paid less for them.

13.    Plaintiff brings this case for herself and the other customers who purchased The M Jewelers Products.

## II.    Parties.

14.    Plaintiff Ryan Sperber is domiciled in Los Angeles, CA.

15.    The proposed class includes citizens of every state.

16.    Defendant The M Jewelers, Inc. is a New York corporation with its principal place of business at 204 Mulberry Street, New York City, NY 10012.

## III.    Jurisdiction and Venue.

17.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

18.    The Court has personal jurisdiction over Defendant because Defendant sold The M Jewelers Products to consumers in California, including to Plaintiff.

19.    Venue is proper under 28 U.S.C. § 1391(b)(1), 28 U.S.C. § 1391(c)(2), and 28 U.S.C. § 1391(d) because Defendant is subject to personal jurisdiction in this District with respect to this action, and would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold The M Jewelers Products to consumers in California and this District, including to Plaintiff. Venue is also proper

under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sale to Plaintiff.

**IV.    Facts.**

**A.    Defendant's fake sales and discounts.**

20.    Defendant The M Jewelers manufactures, distributes, markets, and sells jewelry and accessories ("Products"). The M Jewelers sells its Products directly to consumers online, through its website, TheMJewelersNY.com, and in a handful of brick-and-mortar stores.

21.    Defendant creates the false impression that its Products' regular prices are higher than they truly are.

22.    At any given time, on its website, Defendant advertises steep discounts on its Products. These discounts always offer "X% off" sitewide, and often offer additional discounts such as "up to 60% off select styles." Reasonable consumers reasonably interpret Defendant's advertisements to mean that they will be getting a discount off of the prices that Defendant usually charges for its Products. Even though in truth these discounts run in perpetuity, Defendant prominently claims they are limited time. And it advertises these discounts extensively: on an attention-grabbing banner on every webpage of its website; in a large banner image on its homepage; and during checkout. Example screenshots are provided on the following pages:

*Captured May 31, 2021*

45% OFF YOUR ENTIRE ORDER USE CODE: SUMMER45

WOMEN    MEN    ABOUT    SIGN IN    TRACK ORDER        🔍   👤   🛒

# 45% OFF YOUR ENTIRE ORDER USE CODE: SUMMER45

NEW DROPS EVERY FRIDAY

# NEW ARRIVALS

THE SINGLE CUT INITIAL RING

$185.00

THE GIA LINK BRACELET

THE GIA LINK BRACELET

$68.00

THE MARINER PAVE' GUADALUPE BRACELET

$68.00

THE HALF STONE INITIAL NECKLACE

$75.00

THE JUNA HEART RING

THE JUNA TINY OVAL RING

$75.00

THE JUNA HEART RING

$75.00

THE PAVE' DISC SIGNET RING

THE PAVE' DISC SIGNET RING

$95.00



*Captured June 23, 2021*



*Captured August 25, 2022*

*Captured November 27, 2022*

1
2
3
4
5
6
7
8
9
10



11

*Captured February 2, 2023*

12
13
14
15
16
17
18
19
20



21

*Captured June 13, 2023*

22
23
24
25
26
27
28

*Captured September 14, 2023*

23.    Defendant represents that these discounts will only be available for a limited time, but in reality, they continue indefinitely.  For example, as depicted below, Defendant represents that its sales expire on a particular date or when the countdown clock expires, for example: "00 DAYS 00 HOURS 29 MIN 43 SEC."  To reasonable consumers, this means that after the specified date, Defendant's Products will no longer be on sale and will retail at the purported list prices Defendant advertises.  But immediately after each purportedly time-limited sale ends, Defendant generates another similar discount, with a new expiration date.

24.    For example, on January 2, 2025, Defendant advertised a purportedly time-limited sale that was valid until the end of the day:

Class Action Complaint                10                Case No. 2:25-cv-02029

1
2
3
4
5
6
7
8
9
10



11
12         25.     However, on January 3, 2023, the day that the time-limited sale was
13    supposed to have ended, Defendant advertised the same sale with a new expiration date.

14
15
16
17
18
19
20
21
22
23
24



25
26         26.     Defendant offers these same purported limited-time discounts in its brick-
27    and-mortar stores.
28

Class Action Complaint                11                Case No. 2:25-cv-02029

27.    To confirm that Defendant always offers discounts off of purported regular prices, Plaintiff's counsel performed an investigation of Defendant's advertising practices using the Internet Archive's Wayback Machine (available at www.archive.org).[1] That investigation confirms that Defendant's sales have persisted continuously since at least January 26, 2021.  For example, 52 randomly selected screenshots of Defendant's website, TheMJewelersNY.com, were collected from the Internet Archive's Wayback Machine, from the 2021-2023 period.  In addition, 22 additional screenshots from the TheMJewelers.com website were captured in the 2024-2025 period by visiting the website and recording screenshots.  One hundred percent of these 74 examples displayed a purportedly time-limited, sitewide discount.

28.    Reasonable consumers do not realize the fake nature of the sale.  It is not apparent from merely purchasing the Products, because the sale appears to be a bona fide sale.  Consumers do not have any reason to go back to the website day after day to discover that there is still a sale.  And, even a consumer who occasionally checks the website would reasonably believe that there happened to be another sale.  Discovering Defendant's deception required extensive mining of internet archives, which revealed that the sale is not limited in time, that the discounts are fake, and that the advertised regular prices are fake.

29.    In addition, Defendant's website lists fake regular prices (that is, prices reflecting the list price or value of an item) and fake discounts.

30.    For example, on September 14, 2023, Defendant advertised a purported limited time sale of "60% OFF WITH CODE TM60."  As part of this discount, Defendant listed purported regular prices in strikethrough font.  For example, Defendant represented that the Barb Wire Choker (Danielle Guizio x the M Jewelers)

---

[1] The Internet Archive, available at archive.org, is a library that archives web pages.  https://archive.org/about/

had a regular list price of $135 and a discount price of $54 when the "TM60" code was applied [2]:



31.    But the truth is, the Barb Wire Choker (Danielle Guizio x the M Jeweler's)'s listed regular price of $135.00 is not its regular price. Instead, the purported regular price is much lower, because Defendant always offers steep sitewide discounts on all of its products. As a result, Defendant's customers did not receive a true 60% discount, or $81.00 off. They received a much lower discount, or no discount at all.

32.    Using these tactics, Defendant leads reasonable consumers to believe that they will get a discount on the Products they are purchasing if they purchase during the supposed limited-time promotion. In other words, it leads reasonable consumers to believe that if they buy now, they will get a Product worth X at a discounted, lower price Y. This creates a sense of urgency: buy now, and you will receive something worth more than you pay for it; wait, and you will pay more for the same thing later.

---

[2] Defendant's purported discounts apply automatically or require the application of a coupon code. The coupon codes are advertised extensively, including throughout the website, and purport to offer substantial savings, so substantially all or all of Defendant's customers make use of the coupon codes when available, and purchase at the discount price (not the regular price).

33.    Based on Defendant's advertisements, reasonable consumers reasonably believe that the list prices Defendant advertises are Defendant's regular prices and former prices (that is, the price at which the goods were actually offered for sale before the limited-time offer went into effect).  In other words, reasonable consumers reasonably believe that the list prices Defendant advertises represent the amount that consumers formerly had to pay on Defendant's website for Defendant's goods, before the limited-time sale began, and will again have to pay for Defendant's goods when the sale ends.  Said differently, reasonable consumers reasonably believe that, prior to the supposedly time-limited sale, consumers buying from Defendant had to pay the list price to get the item and did not have the opportunity to get a discount from that list price.

34.    Reasonable consumers also reasonably believe that the list prices Defendant advertises represent the true market value of the Products, and are the prevailing prices for those Products; and that they are receiving reductions from those listed regular prices in the amounts advertised.  In truth, however, Defendant always offers discounts off the purported regular prices it advertises.  As a result, everything about Defendant's price and purported discount advertising is false.  The list prices Defendant advertises are not actually Defendant's regular or former prices, or the prevailing prices for the Products Defendant sells.  And, the list prices do not represent the true market value for the Products, because Defendant's Products are always available for less than that, and customers did not have to formerly pay that amount to get those items.  The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all.  Nor are the purported discounts limited-time—quite the opposite, they are always available.

**B.    Defendant's advertisements are unfair, deceptive, and unlawful**

35.    Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading.  Cal. Bus. & Prof. Code § 17500.  This includes statements falsely suggesting that a product is on sale, when it actually is not.

36.     Moreover, section 17501 of California's False Advertising Law specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising.  Cal. Bus. & Prof. Code § 17501.

37.     In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."  Cal. Civ. Code § 1770(a)(9), (13).

38.     In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price.  16 C.F.R. § 233.1.  They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case.  16 C.F.R. § 233.1.

39.     And finally, California's unfair competition law bans unlawful, unfair, and deceptive business practices.  See Cal. Bus. & Prof. Code § 17200.

40.     Here, as described in detail above, Defendant makes untrue and misleading statements about its prices.  Defendant advertises regular prices that are not its true regular prices, or its former prices, and were not the prevailing market price in the three months immediately preceding the advertisement.  In addition, Defendant advertises goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market values without the intent to sell goods having those former prices and/or market values.  Defendant makes false or misleading statements of fact concerning the reasons for, existence of, and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts.  And Defendant engages in unlawful, unfair, and deceptive business practices.

1      **C.    Defendant's advertisements harm consumers.**

2      41.    Based on Defendant's advertisements, reasonable consumers expect that

3  the list prices Defendant advertises are the regular prices at which Defendant usually

4  sells its Products and that these are former prices that Defendant sold its Products at

5  before the time-limited discount was introduced.

6      42.    Reasonable consumers also expect that, if they purchase during the sale,

7  they will receive an item whose regular price and/or market value is the advertised list

8  price and that they will receive the advertised discount from the regular purchase price.

9      43.    In addition, consumers are more likely to buy the product if they believe

10 that the product is on sale and that they are getting a product with a higher regular price

11 and/or market value at a substantial discount.

12     44.    Consumers that are presented with discounts are substantially more likely

13 to make the purchase.  "Nearly two-thirds of consumers surveyed admitted that a

14 promotion or a coupon often closes the deal, if they are wavering or are undecided on

15 making a purchase."[3]  And, "two-thirds of consumers have made a purchase they

16 weren't originally planning to make solely based on finding a coupon or discount," while

17 "80% [of consumers] said they feel encouraged to make a first-time purchase with a

18 brand that is new to them if they found an offer or discount."[4]

19     45.    Similarly, when consumers believe that an offer is expiring soon, the sense

20 of urgency makes them more likely to buy a product.[5]

21     46.    Thus, Defendant's advertisements harm consumers by inducing them to

22 make purchases based on false information.  In addition, by this same mechanism,

23

24 [3] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.

25 [4] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

26 [5] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in

27 conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher

28 conversation rate for ad with countdown timer).

Defendant's advertisements artificially increase consumer demand for Defendant's Products. This puts upward pressure on the prices that Defendant can charge for its Products. As a result, Defendant can charge a price premium for its Products, that it would not be able to charge absent the misrepresentations described above. So, due to Defendant's misrepresentations, Plaintiff and the class paid more for the Products they bought than they otherwise would have.

**D.  Plaintiff was misled by Defendant's misrepresentations.**

47.  On May 13, 2024, Ms. Sperber purchased a pair of "The Mulberry Pave Open Hoop Earrings" from Defendant's store in 8445 Melrose Ave, West Hollywood, CA 90069. She made this purchase while living in Los Angeles, California. At the time she made her purchase, Defendant's website was advertising a supposedly time-limited "50% OFF / CODE TM50" sale offering 50% off Defendant's list prices for purchases made during the supposed promotion. The website represented that the "Mulberry Pave Open Hoop Earrings" had a regular price of $100 plus tax, but was on sale for a discounted price of $50 plus tax. And, the website represented that Ms. Sperber would receive a discount of "-$50.00" on that Product if she purchased during the sale. Defendant offered this same supposedly time-limited discount to Ms. Sperber in-store.

48.  In the email order confirmation that Defendant sent to Ms. Sperber after she made her purchase, Defendant represented that the Product had a regular price of $100, and that Ms. Sperber was receiving a discounted price of $50. Defendant also represented that Ms. Sperber "saved $50."

49.  In or around July 2024, Ms. Sperber purchased a pair of "The Hanging Rose Earrings" and a pair of "The Bold Paula Hanging Earrings" from Defendant's website, TheMJewelersNY.com. At the time she made her purchase, Defendant's website was advertising a supposedly time-limited, "ENDS THIS WEEK," "65% OFF / CODE JULY65" sale supposedly offering "65% OFF YOUR ENTIRE ORDER." The website represented that the "The Hanging Rose Earrings" had a regular price of $75 plus tax but was on sale for a discounted price of $26.25 plus tax, and that Ms. Sperber

would receive a discount of "-$48.75" on that Product if she purchased during the sale. The website also represented that the "The Bold Paula Hanging Earrings" had a regular price of $75 plus tax but was on sale for a discounted price of $26.25 plus tax, and that Ms. Sperber would receive a discount of "-$48.75" on that Product if she purchased during the sale

50.    In the email order confirmation that Defendant sent to Ms. Sperber after she made her purchase, Defendant represented that "The Hanging Rose Earrings" had a regular price of $75 plus tax but was on sale for a discounted price of $26.25 plus tax, that the "The Bold Paula Hanging Earrings" had a regular price of $75 plus tax but was on sale for a discounted price of $26.25 plus tax, and that Ms. Sperber "saved $87.75" by placing her order during the supposed sale.

51.    Ms. Sperber read and relied on Defendant's representations, specifically that the Products were being offered at a discount for a limited time and had the regular prices listed above.  For example, when making her purchase in July, she relied on the strike-through regular price of "$75.00," the discounted price of "$26.25," and that she would receive a discount of -$48.75 if she bought during the sale.  She also relied on the representations that the sale was time-limited and expiring soon.  Based on Defendant's representations described and shown above, Ms. Sperber reasonably understood that Defendant usually (and formerly, before the promotion Defendant was advertising) sold the Products she was purchasing at the published regular prices, that these regular prices were the market value of the Products that she was buying, that she was receiving the advertised discounts as compared to the regular prices, that advertised discounts were only available for a limited time (during the limited time promotion), and that the products would go back to retailing for the published regular prices when the promotion ended.  She would not have made the purchases if she had known that the Products were not discounted as advertised, and that she was not receiving the advertised discounts.

52.     In reality, as explained above, Defendant's products, including the Products that Ms. Sperber purchased, are always available at a discounted price of off the purported regular prices.  In other words, Defendant did not regularly sell the Products Ms. Sperber purchased at the purported regular price, and the Products were not discounted as advertised.  Plus, the sale was not limited time—Defendant's products are always on sale.

53.     Plaintiff faces an imminent threat of future harm.  Plaintiff would purchase Products from Defendant again in the future if she could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful.  But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive.  For example, while she could watch Defendant's website for a sale on the day that it is supposed to end to see if the sale is permanent, doing so could result in her missing out on the sale (*e.g.*, if the sale is actually limited in time, and not permanent).  Accordingly, Plaintiff is unable to rely on Defendant's advertising in the future, and so cannot purchase Products she would like to purchase.

## E.     Defendant breached its contract with and warranties to Ms. Sperber and the putative class.

54.     When Ms. Sperber, and other members of the putative class, purchased and paid for The M Jewelers Products that they bought as described above, they accepted offers that Defendant made, and thus, a contract was formed each time that they made purchases.  Each offer was to provide Products having a particular listed regular price and market value, and to provide those Products at the advertised discounted price.

55.     Defendant's advertisements, for example on its website, and email confirmations list the market value of the items that Defendant promised to provide (which, for Ms. Sperber, are shown above).  Defendant agreed to provide a discount equal to the difference between the regular prices, and the prices paid by Ms. Sperber and putative class members (also shown above for Ms. Sperber).  For example,

Defendant offered to provide Ms. Sperber (among other things) the Hanging Rose Earrings with a market value of $75.00, and to provide a discount of -$48.75. Defendant also warranted that the regular price and market value of the Product Ms. Sperber purchased was the advertised list price and warranted that Ms. Sperber was receiving a specific discount on the Product.

56.    The regular price and market value of the items Ms. Sperber and putative class members would receive, and the amount of the discount they would be provided off the regular price of those items, were specific and material terms of the contract. They were also affirmations of fact about the Products and a promise relating to the goods.

57.    Ms. Sperber and other members of the putative class performed their obligations under the contract by paying for the items they purchased.

58.    Defendant breached its contract by failing to provide Ms. Sperber and other members of the putative class with Products that have a regular price and market value equal to the regular price displayed, and by failing to provide the discount it promised. Defendants also breached warranties for the same reasons.

**F.    No adequate remedy at law.**

59.    Plaintiff seeks damages and, in the alternative, restitution. Plaintiff is permitted to seek equitable remedies in the alternative because she has no adequate remedy at law.

60.    A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims. For example, Plaintiff's FAL claim under Section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months. Cal. Bus. & Prof. Code § 17501. Plaintiff may be able to prove these more straightforward factual elements, and thus prevail under the FAL, while not being able to prove one or more elements of her legal claims.

61.    In addition, to obtain a full refund as damages, Plaintiff must show that the Product she bought has essentially no market value.  In contrast, Plaintiff can seek restitution without making this showing.  This is because Plaintiff purchased Products that she would not otherwise have purchased, but for Defendant's representations.  Obtaining a full refund at law is less certain that obtaining a refund in equity.

62.    Furthermore, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient.  The need to schedule a jury trial may result in delay.  And a jury trial will take longer, and be more expensive, than a bench trial.

63.    Finally, legal damages are inadequate to remedy the imminent threat of future harm that Plaintiff faces.  Only an injunction can remedy this threat of future harm.  Plaintiff would purchase or consider purchasing Products from Defendant again in the future if they could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful.  But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive.  Thus, Plaintiff is unable to rely on Defendant's advertising in the future, and so cannot purchase Products she would like to purchase

## V.    Class Action Allegations.

64.    Plaintiff brings the asserted claims on behalf of the proposed class of:

- Nationwide Class: all persons who, within the applicable statute of limitations period, purchased one or more The M Jewelers Products advertised at a discount.

- California Subclass: all persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more The M Jewelers Products advertised at a discount.

65.    The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in

which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

### Numerosity & Ascertainability

66.    The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  There are tens or hundreds of thousands of class members.

67.    Class members can be identified through Defendant's sales records and public notice.

### Predominance of Common Questions

68.    There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its advertisements;

(2) whether Defendant violated California's consumer protection statutes;

(3) whether Defendant committed a breach of contract;

(4) whether Defendant committed a breach of an express or implied warranty;

(5) damages needed to reasonably compensate Plaintiff and the proposed class.

### Typicality & Adequacy

69.    Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased The M Jewelers Products advertised at a discount.  There are no conflicts of interest between Plaintiff and the class.

### Superiority

70.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is

1    impractical.  It would be unduly burdensome to have individual litigation of millions of

2    individual claims in separate lawsuits, every one of which would present the issues

3    presented in this lawsuit.

4    **VI.    Claims.**

5    <u>**First Cause of Action:**</u>

6    **Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 &**

7    **17501 et. seq.**

8    **(By Plaintiff and the California Subclass)**

9      71.    Plaintiff incorporates each and every factual allegation set forth above.

10     72.    Plaintiff brings this cause of action on behalf of herself and members of

11   the California Subclass.

12     73.    Defendant has violated sections 17500 and 17501 of the Business and

13   Professions Code.

14     74.    Defendant has violated, and continues to violate, section 17500 of the

15   Business and Professions Code by disseminating untrue and misleading advertisements

16   to Plaintiff and subclass members.

17     75.    As alleged more fully above, Defendant advertises former prices along with

18   discounts.  Defendant does this, for example, by crossing out a higher price (*e.g.,*

19   ~~$100.00~~) and displaying it next to a lower, discounted price.  Reasonable consumers

20   would understand prices advertised in strikethrough font from which time-limited

21   discounts are calculated to denote "former" prices, i.e., the prices that Defendant

22   charged before the time-limited discount went into effect.

23     76.    The prices advertised by Defendant are not Defendant's regular prices.  In

24   fact, those prices are never Defendant's regular prices (i.e., the price you usually have to

25   pay to get the Product in question), because there is always a heavily-advertised

26   promotion ongoing entitling consumers to a discount.  Moreover, for the same reasons,

27   those prices were not the former prices of the Products.  Accordingly, Defendant's

28   statements about the former prices of its Products, and its statements about its discounts

from those former prices, were untrue and misleading.  In addition, Defendant's statements that its discounts are "limited time" and only "valid" for a certain time period are false and misleading too.

77.    In addition, Defendant has violated, and continues to violate, section 17501 of the Business and Professions Code by advertising former prices that were not the prevailing market price within three months next immediately preceding the advertising.  As explained above, Defendant's advertised regular prices, which reasonable consumers would understand to denote former prices, were not the prevailing market prices for the Products within three months preceding publication of the advertisement.  And Defendant's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed.  Defendant's advertisements do not indicate whether or when the purported former prices were offered at all.

78.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing The M Jewelers Products.  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

79.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy The M Jewelers Products.

80.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass.

81.    Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the truth, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

82. For the claims under California's False Advertising Law, Plaintiff seek all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the subclass as a result of Defendant's unlawful conduct.

**<u>Second Cause of Action</u>:**

**Violation of California's Consumer Legal Remedies Act (By Plaintiff and the California Subclass)**

83. Plaintiff incorporates each and every factual allegation set forth above.

84. Plaintiff brings this cause of action on behalf of himself and members of the California Subclass.

85. Plaintiff and the subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

86. Plaintiff and the subclass have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

87. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

88. As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in its advertisements to subclass members. Defendant did this by using fake regular prices, i.e., regular prices that are not the prevailing prices, and by advertising fake discounts.

89. Defendant violated, and continues to violate, section 1770 of the California Civil Code.

90. Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have. Defendant represents that the value of its Products is

greater than it actually is by advertising inflated regular prices and fake discounts for Products.

91.    Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code.  Defendant violates this by advertising its Products as being offered at a discount, when in fact Defendant does not intend to sell the Products at a discount.

92.    And Defendant violated, and continues to violate section 1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions, including by (1) misrepresenting the regular price of Products, (2) advertising discounts and savings that are exaggerated or nonexistent, (3) misrepresenting that the discounts and savings are unusually large, when in fact they are regularly available, (4) misrepresenting the reason for the sale (*e.g.*, "Labor Day Sale," when in fact the sale is ongoing and not limited to Labor Day).

93.    Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

94.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing The M Jewelers Products.  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

95.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy The M Jewelers Products.

96.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass.

97.    Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the

Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

98.    Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiff, on behalf of herself and all other members of the subclass, seeks injunctive relief.

99.    CLRA § 1782 NOTICE.  On February 19, 2025, a CLRA demand letter was sent to Defendant's New York headquarters via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here.  If Defendant does not fully correct the problem for Plaintiff and for each member of the California Subclass within 30 days of receipt, Plaintiff and the California Subclass will seek all monetary relief allowed under the CLRA.

100.    A CLRA venue declaration is attached.

### Third Cause of Action:

### Violation of California's Unfair Competition Law

### (By Plaintiff and the California Subclass)

101.    Plaintiff incorporates each and every factual allegation set forth above.

102.    Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

103.    Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

*The Unlawful Prong*

104.    Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here.

*The Deceptive Prong*

105.    As alleged in detail above, Defendant's representations that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts were false and misleading.

106.    Defendant's representations were misleading to Plaintiff and other reasonable consumers.

107.    Plaintiff relied upon Defendant's misleading representations and omissions, as detailed above.

### The Unfair Prong

108.    As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts.

109.    Defendant violated established public policy by violating the CLRA and FAL, as alleged above and incorporated here.  The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA and FAL).

110.    The harm to Plaintiff and the subclass greatly outweighs the public utility of Defendant's conduct.  There is no public utility to misrepresenting the price of a consumer product.  This injury was not outweighed by any countervailing benefits to consumers or competition.  Misleading consumer products only injure healthy competition and harm consumers.

111.    Plaintiff and the subclass could not have reasonably avoided this injury.  As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiff.

112.    Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

* * *

113.    For all prongs, Defendant's representations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing The M

Jewelers Products. Defendant's representations were a substantial factor in Plaintiff's purchase decision.

114. In addition, subclass-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy The M Jewelers Products.

115. Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass members.

116. Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

117. For the claims under California's Unfair Competition Law, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the subclass as a result of Defendant's unlawful conduct.

<u>**Fourth Cause of Action**</u>:

**Breach of Contract**

**(By Plaintiff and the Nationwide Class)**

118. Plaintiff incorporates each and every factual allegation set forth above.

119. Plaintiff brings this cause of action on behalf of herself and the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

120. Plaintiff and class members entered into contracts with The M Jewelers when they placed orders to purchase Products.

121. The contracts provided that Plaintiff and class members would pay The M Jewelers for the Products ordered.

122.    The contracts further required that The M Jewelers provides Plaintiff and class members with Products that have a market value equal to the advertised list prices . They also required that The M Jewelers provides Plaintiff and the class members with the discount advertised, and listed in the receipt.  These were specific and material terms of the contract.

123.    The specific discounts were a specific and material term of each contract, and were displayed to Plaintiff and class members at the time they placed their orders.

124.    Plaintiff and class members paid The M Jewelers for the Products they ordered, and satisfied all other conditions of their contracts.

125.    The M Jewelers breached the contracts with Plaintiff and class members by failing to provide Products that had a prevailing market value equal to the list price, and by failing to provide the promised discount.  The M Jewelers did not provide the discount that The M Jewelers had promised.

126.    As a direct and proximate result of Defendant's breaches, Plaintiff and class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

127.    For the breach of contract claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the subclass as a result of Defendant's unlawful conduct.

**Fifth Cause of Action:**

**Breach of Express Warranty**

**(By Plaintiff and the Nationwide Subclass)**

128.    Plaintiff incorporates each and every factual allegation set forth above.

129.    Plaintiff brings this cause of action on behalf of herself and the Nationwide Class.  In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

130.    Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of The M Jewelers Products, issued material, written warranties by advertising that

the Products had a prevailing market value equal to the list price. This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

131. This warranty was part of the basis of the bargain and Plaintiff and members of the class relied on this warranty.

132. In fact, The M Jewelers Products' stated market value was not the prevailing market value. Thus, the warranty was breached.

133. Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's registered agent and New York headquarters on February 19, 2025.

134. Plaintiff and the class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Products if they had known that the warranty was false, (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty, and/or (c) they did not receive the Products as warranted that they were promised.

135. For their breach of express warranty claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the subclass as a result of Defendant's unlawful conduct.

## Sixth Cause of Action:
### Quasi-Contract/Unjust Enrichment
### (By Plaintiff and the Nationwide Class)

136. Plaintiff incorporates paragraphs 1-53 and 59-70 above.

137. Plaintiff brings this cause of action in the alternative to her Breach of Contract and Breach of Warranty claims (Counts Four and Five) on behalf of herself and the Nationwide Class. In the alternative, Plaintiff brings this claim on behalf of herself and the California Subclass.

138.   As alleged in detail above, Defendant's false and misleading advertising caused Plaintiff and the class to purchase The M Jewelers Products and to pay a price premium for these Products.

139.   In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

140.   (In the alternative only), due to Defendant's misrepresentations, its contracts with Plaintiff and other class members are void or voidable.

141.   Plaintiff and the class seek restitution, and in the alternative, rescission.

142.   For the quasi-contract/unjust enrichment claims, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the subclass as a result of Defendant's unlawful conduct.

<u>**Seventh Cause of Action:**</u>

**Negligent Misrepresentation**

**(By Plaintiff and the California Subclass)**

143.   Plaintiff incorporates each and every factual allegation set forth above.

144.   Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

145.   As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and California Subclass members concerning the existence and/or nature of the discounts and savings advertised.

146.   These representations were false.

147.   When Defendant made these misrepresentations, it knew or should have known that they were false.  Defendant had no reasonable grounds for believing that these representations were true when made.

148.   Defendant intended that Plaintiff and California Subclass members rely on these representations and Plaintiff and subclass members read and reasonably relied on them.

149.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy The M Jewelers Products.

150.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and California Subclass members.

151.    Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and /or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

152.    For the negligent misrepresentation claims, Plaintiff seeks all damages available including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the subclass as a result of Defendant's unlawful conduct.

**Eighth Cause of Action:**

**Intentional Misrepresentation**

**(By Plaintiff and the California Subclass)**

153.    Plaintiff incorporates each and every factual allegation set forth above.

154.    Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

155.    As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and California Subclass members concerning the existence and/or nature of the discounts and savings advertised.

156.    These representations were false.

157.    When Defendant made these misrepresentations, it knew that they were false at the time that they made them and/or acted recklessly in making the misrepresentations.

158.    Defendant intended that Plaintiff and California Subclass members rely on these representations and Plaintiff and California Subclass members read and reasonably relied on them.

159.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy The M Jewelers Products.

160.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and California Subclass members.

161.    Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and /or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

162.    For the intentional misrepresentation claims, Plaintiff seeks all damages available including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the subclass as a result of Defendant's unlawful conduct.

## VII.    Relief.

163.    Plaintiff seeks the following relief for herself and the class and subclass:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class and subclass;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;

- Any additional relief that the Court deems reasonable and just.

### **Demand For Jury Trial**

164.    Plaintiff demands the right to a jury trial on all claims so triable.


Dated: March 7, 2025                                      Respectfully submitted,

                                                         By: /s/ *Simon Franzini*

                                                         Simon Franzini (Cal. Bar No. 287631)
                                                         simon@dovel.com
                                                         Christin Cho (Cal. Bar No. 238173)
                                                         christin@dovel.com
                                                         DOVEL & LUNER, LLP
                                                         201 Santa Monica Blvd., Suite 600
                                                         Santa Monica, California 90401
                                                         Telephone: (310) 656-7066
                                                         Facsimile: (310) 656-7069

                                                         *Attorneys for Plaintiff*